This is a workmen's compensation case.
The Circuit Court of Dallas County found the employee's claim for workmen's compensation benefits was barred by the statute of limitations. The employee appeals. We affirm.
The dispositive issue is whether the one year statute of limitations applicable to workmen's compensation suits began to run on July 11, 1975, therefore barring the employee's suit which was filed on August 30, 1976.
The record reveals the following:
On June 5, 1975, the employee was employed as a meat grinder for appellee, R.L. Zeigler Company, Inc. While performing his duties on that date, he injured his back in attempting to shovel meat into a hopper or grinder.
As a result of this injury, the employee went to a doctor and missed several days work in June. After his return to work he continued to complain of pain in his back. Finally, in late October or early November of 1975, he allegedly reinjured or *Page 630 
aggravated his back condition. After this incident, he missed several weeks of work in November and December.
There was medical testimony to the effect that the employee suffered from spondylolisthesis which results from repeated heavy forced extension of the back. This testimony indicated that once this condition exists, an unguarded twist or accident can cause the disease to become symptomatic. On March 2, 1977, the employee underwent a spinal fusion operation.
It is uncontroverted that on July 11, 1975, the employee received workmen's compensation benefits for the June absence from work. Zeigler's insurance carrier issued a check to the employee who in turn endorsed the check over to Zeigler.
This procedure was apparently followed pursuant to Zeigler's "sick pay" policy. Under this policy, an employee would receive a specified percentage of his salary if absent from work due to sickness or injury. If the absence was due to an on-the-job injury, Zeigler's insurance clerk would prepare a report and forward it to the compensation carrier. The carrier would then issue a check to the employee who would in turn endorse it over to Zeigler provided the check was for less than the amount he had received as sick pay.
Although the record is not abundantly clear, the employee missed work in October of 1975 due to the recurrence of an off-the-job injury. He received sick pay for this, but not compensation. The insurance clerk testified she informed the employee this was not a compensable injury.
As indicated, the employee again missed time in November and December of 1975 due to the recurrence or aggravation of the back injury. Once again, he received sick pay but no checks from the compensation carrier were forthcoming. Apparently, the insurance clerk did not prepare a report to be sent to the carrier for this time period because she believed the employee's absence was caused by the off-the-job injury.
Several employees of Zeigler, including the insurance clerk and the office manager, testified that Zeigler's sick pay policy had been fully explained to the employee and stated all employees had a written copy thereof. Furthermore, the insurance clerk stated the employee came to see her several times a week during the period he was absent from work to discuss the nature of the payments. Both denied the employee's allegations that they had told him he was receiving compensation and not sick pay.
There was further testimony that after the June 5, 1975, injury, the employee sought light duty work as a security guard. This was denied because he was "too young and irresponsible." However, apparently after the November recurrence of the injury, he was transferred to another job with the same work classification and the same rate of pay. The employee testified the work load on the new job did not differ from that of a meat grinder with the exception that he was no longer required to do heavy lifting.
On appeal, the employee through able counsel advances several theories which, if accepted, would enable him to escape the bar of the one year statute of limitations. He first argues the measuring date of the accident should be November of 1975, when he allegedly became disabled, and not June 5, 1975, the date his back problems first became symptomatic.
He further notes that when compensation payments have been made, the limitations bar does not take effect until one year has expired since the making of the last payment. See, §25-5-80, Code of Ala. 1975. He therefore argues that the November and December sick pay should be deemed compensation for purposes of postponing the running of the statute. Alternatively, he contends that he received compensation when he was transferred to what he would characterize as a "light duty" job.
Finally, he argues that he was told the sick pay he received in November was compensation. He concludes he was the victim of legal fraud and that such fraud should toll the running of the statute. *Page 631 
At the outset, we note that this court reviews workmen's compensation cases by writ of certiorari. Therefore, we do not look to the weight of the evidence as to any fact found by the trial court, but simply look to see if there is any evidence to support those findings. Mobile Pain Mfg. Co. v. Crowley,56 Ala. App. 673, 325 So.2d 182 (1975). That is to say, where there is conflicting testimony in a workmen's compensation proceeding, and there is evidence to support the trial court's findings, those findings are conclusive. Young v. City ofHuntsville, Ala.Civ.App., 342 So.2d 918 (1976), cert. denied, Ala., 342 So.2d 924 (1977).
Turning to the employee's first argument, we conclude the trial court correctly decided that June 5, 1975 was the date of the employee's accident.
This conclusion is compelled by § 25-5-1 (8), Code of Ala. 1975, which defines accident as an "unexpected or unforeseen event, happening suddenly and violently, with or without human fault, and producing at the time injury to the physical structure of the body. . . ." Clearly, this definition contemplates a reasonably definite period of time during which the injury manifests itself. See, United Telephone TelegraphCo. v. Culliver, 271 Ala. 568, 126 So.2d 119 (1961).
In Davis v. Standard Oil Co. of Kentucky, 261 Ala. 410,74 So.2d 625 (1954), the Supreme Court of Alabama reached a like conclusion, holding that under this definition, "accident" is not synonymous with "disability." There, the court said:
 It appears that the courts have uniformly held that the time for filing a suit begins to run from the time of the happening or occurrence which later produced disability and not from the time a compensable injury or disability becomes apparent, where the act provides that the period of limitation runs from the date of the accident, as distinguished from the time of disability or other date.
261 Ala. at 415, 74 So.2d at 629-630.
On appeal, the employee argues for the first time that the disease which has occasioned his difficulties is an occupational disease. As this court will not entertain arguments not advanced at the trial level, we see no need to delineate the employee's contentions on this point. See,Hellums v. Hager, Ala.Civ.App., 360 So.2d 721, writ denied, Ala., 360 So.2d 724 (1978).
In any event, it would appear that the employee's back disease is not an occupational disease, even if caused by lifting, because there was no showing it was either due to hazards in excess of those ordinarily incident to employment or peculiar to the occupation of meat grinder. See, Young v. Cityof Huntsville, Ala.Civ.App., 342 So.2d 918 (1976), cert.denied, Ala., 342 So.2d 924 (1977).
Therefore, the date of the injury for purposes of § 25-5-80
is June 5, 1975, and the employee's suit, filed in August of 1976, is barred unless the employee received compensation payments in the year immediately preceding the filing.
As indicated, it is uncontroverted the employee received a compensation payment on July 11, 1975. At issue is the proper characterization of both the sick pay received in November of 1975 and the wages paid for the alleged light duty job assigned to the employee upon his return to work.
Turning first to the light duty job, we note it has been held that when an injured employee receives the same wages for lighter work upon returning to his job, such payment can be compensation under appropriate circumstances. Head v. TriangleConstruction Co., 274 Ala. 519, 150 So.2d 389 (1963).
In Head, our supreme court said the correct rule involves the following issues: (1) whether the employer was aware, or should have been aware, that the payments were compensation, (2) whether the payments had the effect of a recognition of the employee's claim, and (3) whether the employer paid for more than he received. See also, B.F. Goodrich Co. v. Parker,282 Ala. 151, 209 So.2d 647 (1967). *Page 632 
Here, Zeigler paid the employee the standard wage for a job with the same classification as the one he had previously held. There was no evidence showing the employer could have gotten the job done for less. Furthermore, there was evidence the employee was denied an acknowledged light duty job as a security guard. The employee admitted the new job was no easier than that of a meat grinder, stating the only difference was in the amount of lifting. Clearly, there was evidence to support the trial court's finding the wages paid the employee did not amount to compensation. See, Head, supra.
Next, we address the contention that the sick pay was the equivalent of compensation.
In Belser v. American Cast Iron Pipe Co., Inc., Ala.Civ.App.,356 So.2d 659 (1978), this court, through Judge Bradley, held that although sick pay is generally not recognized as compensation, it may be so classified if certain conditions are met. In so ruling, we adopted the above referenced test laid down in Head, supra.
Applying these factors to the case at bar, we find there is ample evidence to support the conclusion Zeigler was not aware the sick pay was the equivalent of compensation. The company's insurance clerk specifically testified she believed the employee was missing work due to a noncompensable knee injury. It only follows that in making the payments Zeigler was not recognizing the employee's compensation claim. Indeed, no report was prepared or sent to the compensation carrier regarding the November recurrence of the back injury as would have been required under company policy. Likewise, Zeigler did not pay for more than it received. True, the employee was receiving money while missing work, but these payments were made under an established company policy which provided sick pay regardless of the nature of the injury. See, Belser, supra.
Finally, there was also evidence to support the trial court's finding that no legal fraud was practiced upon the employee. While it was held in Dorsey v. United States Pipe FoundryCo., Ala., 353 So.2d 800 (1977), that fraud can toll the running of the statute of limitations, the court also said there must first be found acts by the employer which lead the employee to believe liability is admitted and will not be contested, or acts of the employer which either falsely misrepresent to the employee or falsely conceal from him the truth of the facts which liability depends.
Here, the employee testified he was told he would be compensated for the November recurrence of the injury. Likewise, he stated he was told the sick pay was compensation. However, the insurance clerk and office manager of Zeigler denied making such statements. What is more, the clerk stated that on several occasions she explained to the employee that he was receiving such pay and not compensation. The office manager testified he had explained the sick pay policy fully to the employee. Both denied making any misrepresentation to the employee at any time. We are therefore not prepared to say there was no evidence to support the trial court's finding.
We would further note the employee had actual knowledge of the company's procedures due to his June injury and another injury otherwise not relevant to this suit. After both incidents, he received compensation checks which he in turn endorsed over to Zeigler.
Although it is the policy of this court not to comment upon remarks made in dissent, in this instance the majority feels compelled to make several observations.
First, the employee, both at trial and on appeal, has argued he was the victim of fraud. That is to say, he has not relied upon a theory of estoppel. As this court said in Belser v.American Cast Iron Pipe Co., Inc., Ala.Civ.App., 356 So.2d 659,663 (1978), where the employee also alleged fraud: ". . . [W]e are limited in our review to the theory on which the case was tried. The theory litigated in this instance was fraud and we cannot enlarge that theory on appeal to include estoppel." *Page 633 
In any event, we fail to see why the employer is estopped from asserting the statute of limitations because of its "acts and representation to claimant from June 5, 1975 through its letter of December 3, 1975."
As we have pointed out, there was legal evidence to support the trial court's finding that the employee had been informed he was receiving sick pay, not compensation. Furthermore, he had actual knowledge of the company's policies and thus should have been aware something was amiss when he failed to receive compensation checks after his November absence from work.
We also fail to see how the December 3, 1975, letter to the compensation carrier could in any way serve as the basis of an estoppel. Nowhere does the dissent show how the letter misled the employee or caused him to detrimentally change his position. See, B.F. Goodrich Co. v. Parker, 282 Ala. 151,209 So.2d 647 (1967). Indeed, there is no indication the employee even knew of the existence of this letter.
Neither does the majority find persuasive the dissent's conclusion that the employer, at least through December 3, 1975, did not know whether the November absence was compensable. The tests laid out in Head, supra, and Belser,supra, and even in Dorsey, supra, all look to some knowledge by the employer evidencing an acknowledgment of the employee's claim. Here, the dissent would have ignorance serve the same function and toll the running of the statute.
Finally, the dissent seems to rely on the medical payments made by the employer as forming a possible basis for estoppel. In answer, we would simply note our legislature has made it clear that medical payments, unlike compensation payments, do not toll the statute of limitations. See, § 25-5-1 (1), Code of Ala. 1975; Sam's Place v. Middleton, 39 Ala. App. 481,103 So.2d 812 (1958).
Suffice it to say the majority fails to see the necessity of judicially countermanding this legislative directive. If medical payments are not compensation, the employer should feel free to make them without fear of losing the benefit of the statute of limitations. If the dissent's logic were to be accepted, the result could well be the refusal of employers to make medical payments for deserving, although noncompensable, injuries.
Based upon the above, this case is due to be affirmed.
AFFIRMED. MOTION TO DISMISS APPEAL OVERRULED.
BRADLEY, J., concurs.
WRIGHT, P.J., dissents.