This is a workmen's compensation case, in which the employee, Rickey Gene Gattis, appeals from a summary judgment entered in favor of the employer, NTN-Bower Corporation (NTN-Bower).
The uncontested facts reveal that Gattis began working for NTN-Bower at its plant in Hamilton, Alabama, in 1978. Sometime before 1986, he assumed a job in an area of the plant where he was exposed to airborne chemicals and lubricants. In March 1986, Gattis experienced an episode of choking spasms and breathing difficulties while at work. He reported the incident to his foreman and sought medical treatment. At that time, the treating physician diagnosed his condition as esophageal spasms caused by stomach ulcers, and Gattis returned to work after a day's absence. Following this initial episode, Gattis continued to experience choking spasms periodically. In 1987, a rash began to appear on Gattis's arms and legs. The rash would appear while Gattis was at *Page 438 
the plant, and at times when he was at home. Gattis's symptoms were soon accompanied by painful stomach inflammations, swelling of the extremities, and stiffness of the joints. His condition persisted during the ensuing months; however, examining physicians were unable to diagnose his problem with any specificity. Due to his deteriorating health, Gattis took a leave of absence from NTN-Bower on November 2, 1987.
Gattis resumed work at NTN-Bower's plant on February 15, 1988. However, his condition worsened, and, according to Gattis, he began to experience weakness in addition to his previous symptoms. Overcome by his physical problems, Gattis left the plant on April 14, 1988, the last date on which he worked for NTN-Bower. In June 1988, Gattis's wife went to the plant and informed the company's personnel director that she believed Gattis's health problems were attributable to his employment. She requested that NTN-Bower send Gattis to a company doctor for treatment. The personnel director, however, denied the request, asserting that it was the company's position that Gattis's condition was unrelated to his work.
Gattis continued to seek a diagnosis for his condition. In the summer of 1989, following a series of medical examinations and tests, physicians determined that Gattis was suffering from poisoning due to chemical exposure. The tests revealed a high concentration of a particular toxic chemical in Gattis's muscles and in a number of his organs.
On January 4, 1990, Gattis filed a complaint for workmen's compensation benefits, wherein he alleged that he had "suffered injury and damage" as a result of his exposure to chemicals in the course of his employment with NTN-Bower. NTN-Bower answered and subsequently filed a motion for summary judgment, raising the statute of limitations as an affirmative defense.
In his complaint, and at the hearing on NTN-Bower's motion, Gattis asserted that he was seeking recovery under the "accident" provisions of the Workmen's Compensation Act and disavowed any reliance on the "occupational disease" provisions of the act. After considering the arguments of counsel, together with a deposition and affidavit filed by Gattis, the trial court entered a summary judgment for NTN-Bower. The trial court found that Gattis's claim under the "accident" provisions of the act was barred by the statute of limitations provided by § 25-5-80, Code 1975, because his complaint was not filed within two years of March 1986, the date on which the symptoms of his condition first became manifest. In addition, the trial court found that Gattis had failed to provide NTN-Bower with timely notice of the accident, as required by § 25-5-78, Code 1975. The trial court ruled alternatively that if Gattis's claim was to be considered under the "occupational disease" provisions of the act, it would nonetheless be barred by the one-year statute of limitations provided by § 25-5-117, Code 1975.
Gattis filed a motion for new trial or, in the alternative, to alter, amend, or vacate the trial court's judgment. The motion was denied. Gattis appeals, contending that his complaint and notice were timely and that, therefore, summary judgment was improper.
In reviewing the disposition of a motion for summary judgment, we use the same standard as the trial court in determining whether the evidence made out a genuine issue of material fact and whether the moving party was entitled to a judgment as a matter of law. Graveman v. Wind Drift Owners'Ass'n, Inc., 607 So.2d 199 (Ala. 1992).
Section 25-5-80, Code 1975, sets forth a two-year statute of limitations for initiating an action for injuries resulting from on-the-job accidents, and, at the time of the alleged injury and the filing of this action, provided in pertinent part as follows:
 "In case of a personal injury, all claims for compensation under this article and article 2 of this chapter shall be forever barred . . . unless within two years after the accident one of the parties shall have filed a verified complaint as provided in section 25-5-88."
Gattis contends that his last exposure to chemicals at NTN-Bower's plant should be considered an "accident" for purposes of the Workmen's Compensation Act and that the two-year statute of limitations in § 25-5-80 began to run from the date of last exposure, *Page 439 
which he alleges to be April 14, 1988. Therefore, he maintains, his complaint was timely filed. The trial court ruled, however, that under the act, the date of an accident "is the date the symptoms of the injury first become manifest." The trial court found that Gattis, by his own testimony, first experienced the symptoms of his debilitating condition in March 1986 and that, therefore, his action was time-barred when he filed his complaint.
In support of the trial court's judgment, NTN-Bower argues that if the legislature had intended the limitation period of § 25-5-80 to run from the "date of last exposure," it could have so provided, as it did in the statute of limitations for occupational diseases found at § 25-5-117, Code 1975. That Code section provides that the limitations period for occupational diseases begins to run from the date of "injury," which it expressly defines as the date the employee was last exposed to the causative agent:
 "The date of the injury shall mean, for all purposes of this article, the date of the last exposure to the hazards of the disease in the employment of the employer in whose employment the employee was last exposed to the hazards of the disease."
Section 25-5-117 (emphasis added). There is no such "last exposure" provision in § 25-5-80. Accordingly, NTN-Bower argues that the legislature must have intended that the date of an "accident" (as found in § 25-5-80) be the date the debilitating condition first becomes symptomatic after exposure to "the causative agent."
As further support for the trial court's judgment, NTN-Bower directs our attention to Blackmon v. R.L. Zeigler Co.,390 So.2d 628 (Ala.Civ.App.), cert. denied, 390 So.2d 635 (Ala. 1980), where the reviewing court held that, for purposes of §25-5-80, the date of the employee's "accident" was the date on which his back injury first became symptomatic, rather than the date on which the disability for which he sought recovery was fully realized. The court reasoned that its holding was compelled by the definition of "accident" at § 25-5-1(8), Code 1975, which, it said, clearly contemplates "a reasonably definite period of time during which the injury manifests itself." 390 So.2d at 631.
The court in Blackmon relied on the distinction between "accident" and "disability" as enunciated in Davis v. StandardOil Co. of Kentucky, 261 Ala. 410, 415, 74 So.2d 625, 629-30
(1954), where our supreme court said:
 "It appears that the courts have uniformly held that the time for filing a suit begins to run from the time of the happening or occurrence which produced disability and not from the time a compensable injury or disability becomes apparent, where the act provides that the period of limitations runs from the date of the accident, as distinguished from the time of disability or other date."
We are compelled to point out, however, that the decisions inDavis and Blackmon, and in cases following their rationale (see, e.g., City of Florence v. Gallien, 484 So.2d 1095
(Ala.Civ.App. 1986)), were premised on a narrow definition of "accident," which rigidly adhered to the requirement that an accident be a sudden event. Such a requirement has been supplanted in case law. In Ex parte Harris, 590 So.2d 285 (Ala. 1991), our supreme court explicitly rejected the aspect of "suddenness" in defining "accident," stating that a definition that looks to the event causing the injury, and not the result thereof, is no longer valid: "if the job caused the injury, then the injury is an accident within the intent of the Act."Harris at 286.
Harris was the articulation of a well-established tendency by our courts to recognize longer and longer periods as sufficiently identifiable "times of accident." In Kane v. SouthCentral Bell Telephone Co., 368 So.2d 3 (Ala. 1979), our supreme court held that an employee's heart attack brought on by gradual inhalation of paint fumes over a two-day period constituted an "accident" as that term is used in the Workmen's Compensation Act. In B.F. Goodrich Co. v. Martin, 47 Ala. App. 244, 253 So.2d 37 (Ala.Civ.App.), cert. denied, 287 Ala. 726,253 So.2d 45 (1971), this court held that an employee who over a period of more than one year became sensitized and violently allergic to rubber cement used in the workplace was injured as a result of an "accident." In Albertville Nursing Home v.Upton, 383 So.2d 544 (Ala.Civ.App. 1980), this court held that a skin condition, resulting *Page 440 
from daily contact with caustic cleaning solutions, was an accident under the act. (But see Dodson v. Atrax Division ofWallace-Murray Corp., 437 So.2d 1294 (Ala.Civ.App. 1983), where this court held that an employee's allergic reaction as a result of prolonged exposure to metal dust, resulting in bronchitis and hypersensitive airways, was an "occupational disease" within the meaning of the Workmen's Compensation Act.)
This court recognizes that the expansion of the time-frame for the occurrence of an "accident" has somewhat blurred a traditional distinction between accidents and "occupational diseases," which generally arise after prolonged exposure to hazardous conditions. In fact, the trial court, in its order, indicated that Gattis's complained-of condition might more properly be classified as an "occupational disease." As noted above, the trial court alternatively ruled that, if considered under the "occupational disease" provisions of the act, Gattis's claim for compensation was barred by the one-year statute of limitations of § 25-5-117. We note, however, that both Gattis and NTN-Bower conceded at oral argument that Gattis's condition was to be considered under the "accident" provision of the act and that it was not an occupational disease.
We find that a rule defining an "accident" always as a sudden occurrence — and which, for purposes of § 25-5-80, rigidly dates the "accident" as the first manifestation of a debilitating condition — is inconsonant with the beneficent purposes of the Workmen's Compensation Act as well as with established interpretations of the act. It is apparent that the act is now to be construed so as to recognize the reality that certain "accidents" occur over a period of time and that the disabilities resulting therefrom become symptomatic only over a period of time. That is, it has been recognized that there are cumulative-effect accidents as well as single-event accidents.
Professor Larson has addressed the problems created through mechanical application of a narrow and outdated definition of accident to statutes of limitation for workmen's compensation claims:
 "A rigid claims period may operate unfairly not only because the nature, seriousness, and work-connection of the injury could not reasonably be recognized by the claimant, or perhaps even by his doctor, but in many cases because the injury itself does not exist in compensable degree during the claims period. This latent or delayed injury problem presents in the sharpest relief the senselessness of uncompromising time periods. The classic illustration is that of the apparently trivial accident that matures into a disabling injury after the claim period has expired. A workman is struck in the eye by a metal chip, but both he and the company doctors dismiss the accident as a petty one, and of course no claim is made, since there is no present injury or disability. Eighteen months later a cataract develops as the direct result of the accident. If the statute bars claims filed more than one year after the 'accident,' and if the court applies the statutory language with medieval literalism, the workman can never collect for the injury no matter how diligent he is: He cannot claim during the year, because no compensable injury exists; he cannot claim after the year, because the statute runs from the accident."
2B A. Larson, The Law of Workmen's Compensation § 78.42(a) (1989).
Professor Larson further writes:
 "It is odd indeed to find, in a supposedly beneficent piece of legislation, the survival of this fragment of irrational cruelty surpassing the most technical forfeitures of legal statutes of limitation. Statutes of limitation generally proceed on the theory that a man forfeits his rights only when he inexcusably delays assertion of them, and any number of excuses will toll the running of the period. But here no amount of vigilance is of any help. The limitations period runs against a claim that has not yet matured; and when it matures, it is already barred. For good measure, the exclusive remedy provisions of the Compensation Act also abolish claimant's common-law remedies."
Larson, § 78.42(b) (emphasis added).
Professor Larson's observations are well taken and particularly appropriate in the *Page 441 
context of the instant case. Gattis was exposed to chemicals at NTN-Bower repeatedly and for a prolonged period of time. For some time after the original manifestation of his symptoms, Gattis's condition appeared to be relatively benign and unconnected to work. His choking spells were diagnosed in March 1986 as esophageal spasms caused by stomach ulcers. There is no indication that Gattis or his various treating physicians understood the cause of his symptoms or the nature of his condition for a considerable period of time. According to uncontested evidence, in 1987 NTN-Bower's company nurse told Gattis that his symptoms were probably caused by "stress" due to his gastrointestinal problems. According to Gattis, doctors subsequently determined that he did not suffer from stomach ulcers. His joint problems were diagnosed tentatively as "polyarthritis" in 1987. The evidence indicates that it was not until sometime in 1988, when Gattis's condition worsened after his return to work, that Gattis and his wife suspected that his health problems were work-related. Moreover, even after repeated medical treatment and testing, it was not until the summer of 1989 that Gattis's condition was diagnosed as poisoning due to chemical exposure. Gattis filed his complaint in January 1990. There is absolutely no indication that heinexcusably delayed asserting his rights.
It may nonetheless be argued that an expanded definition of "time-of-accident" renders problematic a determination of the actual date on which the accident occurred for purposes of the statute of limitations and the notice requirements of the act. Sections 25-5-80 and -78 clearly state that the claims and notice periods run from the time of the "accident." In view of this language and the practical considerations involved, we find it useful to recognize a "repeated-impact theory" in the case sub judice, wherein each exposure to the causative agent may be deemed an accidental occurrence for purposes of the act.See Larson, 1B, § 39.40. Gattis last worked at NTN-Bower's facility on April 14, 1988, the last day he was exposed to the chemical agents that caused his injury.
While it was not a workmen's compensation case, we find the recent supreme court case of Hillis v. Rentokil, Inc.,596 So.2d 888 (Ala. 1992), to support our holding in this case. InHillis, the employee was exposed on a continuing basis to harmful substances, and our supreme court held that "[t]he 'date of injury' for statute of limitations purposes is 'the day on which the plaintiff was last exposed to the damages.' "Hillis at 890.
In cases of summary judgment, this court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Graveman, supra.
Viewing the evidence in the light most favorable to Gattis, we find that Gattis would have been exposed to chemicals in the course of his employment on April 14, 1988. He filed his complaint on January 4, 1990, within the two-year statute of limitations period provided in § 25-5-80. Gattis's wife averred that she gave notice in June 1988, and the trial court found that Gattis gave notice of his accident to NTN-Bower in "June or July of 1988." Since notice was provided in June 1988, it was clearly within the 90-day post-accident period provided in § 25-5-78, Code 1975. We hold that summary judgment for NTN-Bower was improper.
The judgment of the trial court is reversed, and this cause is remanded for further proceedings.
REVERSED AND REMANDED WITH DIRECTIONS.
THIGPEN and YATES, JJ., concur.