689 So.2d 113 (1996)
Donald Bruce FLESHER
v.
SAGINAW DIVISION, GENERAL MOTORS CORPORATION.
2951082.
Court of Civil Appeals of Alabama.
November 1, 1996.
Rehearing Denied December 6, 1996.
Certiorari Denied March 14, 1997.
William D. Davis III of Davis, Dorin, Curtis & Neil, Birmingham, for appellant.
*114 J. Glynn Tubb and Jenny L. McLeroy of Eyster, Key, Tubb, Weaver & Roth, Decatur, for appellee.
Alabama Supreme Court 1960448.
ROBERTSON, Presiding Judge.
On September 29, 1995, Donald Bruce Flesher filed a complaint against his employer, Saginaw Division, General Motors Corporation, in the Limestone County Circuit Court, seeking workers' compensation benefits. Flesher alleged that while acting in the line and scope of his employment he had been consistently exposed to hazardous chemicals, with his last exposure occurring on May 10, 1995, and that his consistent exposure had rendered him permanently and totally disabled. On October 18, 1995, Saginaw answered, asserting the affirmative defenses of the statute of limitations and lack of notice.
On February 16, 1996, Saginaw filed a motion for a summary judgment, along with a supporting affidavit and a memorandum brief. On March 18, 1996, Flesher filed a response in opposition to the summary judgment motion, filing with the response supporting affidavits and documents. On May 8, 1996, the trial court entered a summary judgment for Saginaw, holding that Flesher's claim had arisen on March 12, 1992, and that his action was therefore barred by the two-year limitations period of § 25-5-80, Ala. Code 1975.
Flesher appeals. He argues that the two years allowed by the statute of limitations began to run from the date of his last exposure, not his initial exposure.
A summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c)(3), Ala.R.Civ.P. The burden is on the movant to show that there exists no genuine issue of material fact; however, once a party moving for a summary judgment makes a prima facie showing that no genuine issue of material fact exists, then the burden shifts to the nonmovant to rebut the prima facie showing. McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So.2d 957 (Ala.1992). Additionally, this court's review of legal issues in workers' compensation cases is without a presumption of correctness. § 25-5-81(e)(1), Ala.Code 1975.
The record reveals the following facts. On March 12, 1992, Flesher inhaled fumes of an unknown origin that caused him to suffer a headache, a burning sensation in the back of his throat, and vomiting. Flesher promptly reported the incident and was treated by Saginaw's plant physician. Flesher reported similar symptoms and was again treated by the plant physician on March 16, 23, and 26, 1992.
Flesher reported to Saginaw's medical department on January 23, 1993, complaining of nausea from inhalation of smoke and fumes. Flesher continued working until June 1994, when the plant physician diagnosed him as having depression and anxiety, placed him on Prozac, and took him off work because of his "nerves"; he remained off work until January 1995. From June 1994 until January 1995, Flesher was paid disability payments pursuant to his long-term disability policies. On February 16, 1995, he suffered a severe reaction to chemical fumes that caused him to be taken to the emergency room at the University of Alabama at Birmingham Hospital. During his treatment in Birmingham, Flesher learned that he had had an allergic reaction to chemicals at Saginaw's plant. Flesher returned to work on May 8, 1995. Flesher worked May 8, 9, and 10, 1995; however, on May 10, 1995, he suffered another severe reaction to fumes that caused the plant nurse to place him on oxygen and that required that he leave the plant. That day was his last day of work at Saginaw's plant.
In Gattis v. NTN-Bower Corp., 627 So.2d 437 (Ala.Civ.App.1993), this court stated:
"We find that a rule defining an `accident' always as a sudden occurrenceand which, for purposes of § 25-5-80, rigidly dates the `accident' as the first manifestation of a debilitating conditionis inconsonant with the beneficent purposes of the Work[ers'] Compensation Act as well as with established interpretations of the act. It is apparent that the act is now to be *115 construed so as to recognize the reality that certain `accidents' occur over a period of time and that the disabilities resulting therefrom become symptomatic only over a period of time. That is, it has been recognized that there are cumulative-effect accidents as well as single-event accidents.
"Professor Larson has addressed the problems created through mechanical application of a narrow and outdated definition of accident to statutes of limitation for workmen's compensation claims:
"`A rigid claims period may operate unfairly not only because the nature, seriousness, and work-connection of the injury could not reasonably be recognized by the claimant, or perhaps even by his doctor, but in many cases because the injury itself does not exist in compensable degree during the claims period. This latent or delayed injury problem presents in the sharpest relief the senselessness of uncompromising time periods. The classic illustration is that of the apparently trivial accident that matures into a disabling injury after the claim period has expired. A workman is struck in the eye by a metal chip, but both he and the company doctors dismiss the accident as a petty one, and of course no claim is made, since there is no present injury or disability. Eighteen months later a cataract develops as the direct result of the accident. If the statute bars claims filed more than one year after the "accident," and if the court applies the statutory language with medieval literalism, the workman can never collect for the injury no matter how diligent he is: He cannot claim during the year, because no compensable injury exists; he cannot claim after the year, because the statute runs from the accident.'
"2B A. Larson, The Law of Workmen's Compensation § 78.42(a) (1989).
"Professor Larson further writes:
"`It is odd indeed to find, in a supposedly beneficent piece of legislation, the survival of this fragment of irrational cruelty surpassing the most technical forfeitures of legal statutes of limitation. Statutes of limitation generally proceed on the theory that a man forfeits his rights only when he inexcusably delays assertion of them, and any number of excuses will toll the running of the period. But here no amount of vigilance is of any help. The limitations period runs against a claim that has not yet matured; and when it matures, it is already barred. For good measure, the exclusive remedy provisions of the Compensation Act also abolish claimant's common-law remedies.'
"Larson, § 78.42(b) (emphasis added)."
627 So.2d at 440. In Gattis, this court also recognized a "repeated-impact theory" in cases involving an employee's exposure to chemicals over a period of time and recognized that each exposure to chemicals may be deemed an accidental occurrence for purposes of the Workers' Compensation Act. In a "repeated-impact theory" case, the two-year limitations period provided in § 25-5-80, Ala.Code 1975, begins to run the last day that the employee was exposed to the "causative agent." Gattis, supra.
Flesher's initial exposure was not treated as serious by either Flesher or Saginaw's company doctor. Flesher continued to be exposed to smoke and fumes, and with each successive exposure his reaction became more severe until May 10, 1995, when the severity of his reaction required that he be administered oxygen and that he leave Saginaw's plant. This series of escalating severe reactions fits the model of a "cumulative-effect" accident. Flesher's claim is therefore properly considered under the "repeated-impact theory" set forth in Gattis, supra.
Based on the foregoing, we conclude that the period allowed by the statute of limitations for Flesher's workers' compensation claim began to run on May 10, 1995, the date he was last exposed to chemicals at Saginaw's plant. Therefore, the trial court erred in holding that Flesher's action was barred by § 25-5-80 and in entering the summary judgment for Saginaw.
The judgment is due to be reversed and the case remanded for further proceedings.
REVERSED AND REMANDED.
*116 THIGPEN, YATES, and MONROE, JJ., concur.
CRAWLEY, J., concurs in the result.
CRAWLEY, Judge, concurring in the result.
I agree that the statutory limitations period does not bar Flesher's compensation claim against his employer, but not for the reasons stated by the majority. I would hold that the limitations period began to run in June 1994, when Flesher first lost time from work as a result of his physical condition and his employer failed to pay him compensation benefits. See American Cyanamid v. Shepherd, 668 So.2d 26 (Ala.Civ.App.1995).
In Shepherd, this court held that in "a latent injury case ... `[t]he time period [of the statute of limitations] does not begin to run until the claimant, as a reasonable person, should recognize the nature, seriousness, and compensable character of his injury or disease.'" 668 So.2d at 28 (quoting 2B A. Larson, The Law of Workmen's Compensation § 78.41(a) at 15-185, -186 (1989)).
In Gattis v. NTN-Bower Corp., 627 So.2d 437 (Ala.Civ.App.1993), the case upon which the majority relies, the claimant did not recognize the nature, seriousness, and compensable character of his injury or disease until after the date of his last exposure to hazardous chemicals at work. Thus, this court held in Gattis that the statute of limitations began to run on the date of last exposure.
In this case, however, Flesher knew that his physical ailments were work-related long before the date of his last exposure. On March 12, 1992, he reported an injury consisting of a headache, a burning sensation in his throat and chest, and vomiting, which he described as being caused by the inhalation of fumes at work. In April 1992, Dr. Serio diagnosed Flesher with obstructive airway disease, secondary to tobacco use, with a probable exacerbation due to exposure to chemicals at work.
Flesher recognized or should, as a reasonable person, have recognized that his injury or disease was at least partially attributable to his employment as early as March or April 1992. Nevertheless, the statutory limitations period did not begin to run then, because Flesher, like the claimant in Shepherd, had no compensable claim against his employer at that time. Flesher had not missed any time from work and his employer had apparently paid his medical expenses.
Flesher had a compensable claim in June 1994, when he first lost time from work as a result of his injury or disease and his employer failed to pay him compensation benefits. The statutory limitations period began to run in June 1994; Flesher's June 29, 1995, complaint was clearly within the two-year limitations period.