YATES, Presiding Judge.
William Patrick appeals from a summary judgment entered in favor of his employer, the Tuscaloosa County Commission (“the County”), on his claim seeking workers’ compensation benefits.[1] The County has not filed a brief in this court.
We initially note that in reviewing a ruling on a motion for summary judgment, we use the same standard the trial court *47 used in determining whether the evidence before it presented a genuine issue of material fact and whether the movant was entitled to a judgment as a matter of law. Bussey v. John Deere Co., 531 So.2d 860, 862 (Ala.1988); Rule 56(c), Ala. R. Civ. P. When the movant makes a prima facie showing that no genuine issue of material fact exists, the burden shifts to the non-movant to present substantial evidence creating such an issue. Bass v. South-Trust Bank of Baldwin County, 538 So.2d 794 (Ala.1989). Evidence is “substantial” if it is of “such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989). This court must review the record in a light most favorable to the nonmovant and must resolve all reasonable doubts against the movant. Hanners v. Balfour Guthrie, Inc., 564 So.2d 412 (Ala.1990).
At the time of the events giving rise to this action, Patrick was 45 years old and had been employed with the County for approximately 11 years in the maintenance department at the county courthouse. Patrick was regularly exposed to pigeon droppings while employed with the county. Patrick testified that as part of his duties, he was required to clean the pigeon droppings from the courthouse porch, landings, and rails, approximately eight times a year, during each year that he was employed by the County. Additionally, in 1992, Patrick and other employees worked to dismantle an air conditioning unit that was located on top of the county jail. Patrick worked for approximately two and a half days to remove some wooden slats that supported the air conditioning unit. These wooden slats were covered with large amounts of pigeon droppings.
Patrick testified that in April 1997 he began experiencing severe chest pains, shortness of breath, and dizziness. He also stated that he was coughing up blood and vomiting early in the morning. Patrick was hospitalized on July 27, 1997, by Dr. Richard Shamblin. A chest X-ray revealed the presence of a nodular mass in the right-lower-lung field. A subsequent CT scan also showed a mass in the right lower lung. Patrick was eventually discharged from the hospital and continued under Dr. Shamblin’s care.
Dr. Shamblin consulted Dr. Ronald T. Olivet, a cardiovascular surgeon, regarding the mass in Patrick’s right-lower-lung. Dr. Olivet recommended surgery to remove the mass. Dr. Olivet performed surgery on September 17, 1997. During the surgery, Dr. Olivet removed a small portion of the mass for biopsy. Dr. Olivet testified that the preliminary examination of the tissue revealed the presence of cryp-tococcal organisms. After receiving the preliminary report from the biopsy, Dr. Olivet determined that Patrick suffered from cryptococcoses, a fungal infection, and decided to remove the entire right lower lobe of Patrick’s lung. The final laboratory report received on September 19, 1997, confirmed Dr. Olivet’s impression that Patrick suffered from cryptococcoses. A primary cause of cryptococcoses is the exposure to pigeon droppings. Dr. Olivet testified that cryptococcoses is a serious condition that can be fatal.
Patrick was discharged from the hospital on September 25, 1997. Patrick made a claim with the County for payment of his medical expenses, upon being informed that cryptococcoses is primarily caused by exposure to pigeon droppings. Patrick’s claim was denied by a letter, on December 27, 1997. Patrick testified that he returned to work in early November 1997 and at that time informed his supervisors *48 that his doctors did not want him exposed to pigeon droppings. However, Patrick stated that he continued to be required to clean the pigeon droppings from the courthouse grounds; therefore, he said, he resigned from his employment with the County. He resigned on November 18, 1998.
Patrick was hospitalized in January 1998 and in June 1998, complaining of chest pains. A CT scan taken in January 1998 revealed the presence of a pulmonary nodule on Patrick’s right-upper-lung. In March 1999, Patrick was admitted to the hospital in Grove Hill, Alabama, after having fainted. He was seen by Dr. A. Garrett Miller, who noted that at the time Patrick was dizzy, lethargic, and dehydrated. Patrick was diagnosed with chronic obstructive pulmonary disease, unrelated to the cryptococcosis infection.
Patrick sued the County on September 17, 1999, seeking to recover workers’ compensation benefits, alleging that on and before November 18, 1998, an employer/employee relationship had existed between the County and him and that he had contracted cryptococcosis during the course of his employment with the County. The County answered on January 31, 2000, denying the allegations in the complaint and raising no affirmative defenses. On March 13, 2000, Patrick moved the court to order the County to provide immediate medical treatment and care for his crypto-coccosis, alleging that his condition had recently worsened and that he was suffering from symptoms similar to those he had suffered from before his September 1997 surgery and diagnosis of cryptococcosis.
On May 1, 2000, Patrick was again hospitalized by Dr. Shamblin, for a cough, weight loss, and chest pains. Dr. Sham-blin testified that he was concerned that Patrick had again contracted cryptococco-sis following a subsequent exposure to pigeon droppings. Dr. Shamblin performed certain tests on Patrick in order to determine whether Patrick had again contracted cryptococcosis; however, the results of those tests would not be known for several weeks. Patrick was released from the hospital on May 3, 2000.
On May 10, 2000, the trial court conducted an ore tenus hearing on Patrick’s motion seeking medical treatment. The sole issue tried by the court at that hearing was whether Patrick had suffered a com-pensable injury and whether the County was responsible for the payment of Patrick’s medical expenses. On June 27, 2000, Patrick submitted to the court the second deposition of Dr. Shamblin. Dr. Shamblin testified that Patrick had had a reoccurrence of symptoms that were consistent with a diagnosis of cryptococcosis; however, the tests performed in May 2000 were negative for cryptococcosis. The trial court entered the following order on July 6, 2000:
“This cause came to be heard on plaintiffs motion for emergency medical treatment. After hearing the evidence, the court finds the plaintiff was employed by the Tuscaloosa County Commission from 1987 to November 18, 1998. During his period of employment with the defendant, he was repeatedly exposed to pigeon droppings. He testified that he was not exposed to pigeon droppings anywhere else. In early 1996 the plaintiff began to experience a burning chest pain and cough. This continued until July 27, 1997. At that time the plaintiff was hospitalized for a spider bite. A chest x-ray revealed a nodule on his right lung. Later in August or in early September, 1997 the plaintiff had an episode of coughing up blood. He was hospitalized on September 12, 1997. A new chest x-ray showed a lesion in the lower right lung. Dr. Ronald T. Olivet, *49 a thoracic surgeon was called in for consultation. He did surgery, removed the lower [right] half of the plaintiffs lung containing an abnormal mass. A pathology report showed it to contain crypto-coccosis organisms. The most probable cause of this infection was exposure to pigeon droppings. Dr. Olivet testified that the plaintiff should follow up with chemotherapy for about 2 months, and the infection should be cured. The plaintiff was hospitalized in January and June of 1998 for severe chest pain. There is no evidence that those hospitalizations were for a recurrence of the plaintiffs cryptococcosis infection. In March of 1999 the plaintiff presented himself to the emergency room in Grove Hill, Alabama. He was diagnosed with chronic obstructive pulmonary disease, not related to the cryptococcosis infection.
“The plaintiff again began experiencing symptoms this year, and on May 1, 2000, the plaintiff was hospitalized. The diagnosis was for an infection unrelated to the 1997 cryptococcosis infection. It appears that the plaintiff reached maximum medical improvement for his cryp-tococcosis infection around the end of November 1997. The court finds that the cryptococcosis infection of 1997 did arise out of, and in the course of, his employment with the defendant, Tuscaloosa County. The date of the plaintiffs injury was in July of 1997. There is evidence before the court that this infection had been completely cured as of two months after his surgery. The treatment the plaintiff received in 1999 and 2000 are not related to his occupational disease, and the motion for emergency medical treatment is denied. The plaintiff was exposed to pigeon droppings until he quit his job on November 18, 1998. However, that exposure was not injurious because he had no recurrence of the cryptococcosis infection after his treatment in September, 1997.”
On August 4, 2000, Patrick moved the court to amend that order; the court denied his motion on the same day.
Thereafter, on September 7, 2000, 63 days after the trial court had entered its order finding that the cryptococcosis contracted by Patrick in 1997 was compensa-ble, but denying his motion for emergency medical treatment, the County amended its answer to raise for the first time the affirmative defense of the statute of limitations. On that same day, the County moved for a summary judgment, contending that Patrick’s workers’ compensation complaint filed on September 17, 1997, was barred by the applicable statute of limitations.
On September 18, 2000, Patrick made a filing in opposition to the summary judgment motion and moved to strike the County’s amended answer raising the statute of limitations as a defense. He contended that the defense had not been timely raised; had not been raised until after the issue of compensability had been tried; and that the County had not sought or obtained permission from the trial court to amend its answer to raise the statute of limitations as a defense. In opposition to the County’s motion for summary judgment, Patrick argued, among other things, that the County had waived the defense of the statute of limitations.
After conducting a hearing, the trial court, on November 29, 2000, entered the following order:
“This cause came to be heard on defendant’s motion for summary judgment. The case had been previously heard on plaintiffs motion for emergency medical treatment. It was determined at that hearing that it would be necessary to determine certain issues on the merits *50 to determine if the defendant was liable for medical expenses. The court determined that in 1996 and 1997 the plaintiff was exposed to pigeon droppings, which caused the plaintiffs lung condition. The disease was discovered in July 1997, and surgery was done to remove the diseased lung tissue. The plaintiff reached maximum medical improvement in November of 1997 and returned to work. The plaintiff voluntarily left his employment with the defendant in November of 1998. The plaintiff was again exposed to pigeon droppings from November of 1997 to November of 1998. In 1999, after the plaintiff left his employment with the defendant, he again began experiencing pulmonary problems, but no doctor has related these problems to pigeon droppings or plaintiffs employment with the defendant.
“The last injurious exposure rule applies to this case. Therefore, the plaintiff would have to make a claim for workman’s compensation within 2 years of his last injurious exposure, i.e., 2 years from July of 1997. The plaintiff filed this workman’s compensation claim on April 27, 2000. Therefore, the claim is barred by the two-year statute of limitations.
“There being no dispute of a material fact that this case is barred by the two year statute of limitations, the defendant is entitled to summary judgment as a matter of law, and same is granted as to the workman’s compensation claim. The defendant remains hable for any future medical expenses that can be related to the 1997 cryptococcosis. Each party to bear their own costs.”
On December 20, 2000, Patrick moved the court to alter, amend, or vacate its judgment, arguing that he had filed his workers’ compensation complaint on September 17, 1999, rather than on April 27, 2000; that the “last-injurious-exposure rule” does not apply; that the “latent-injury,” or, in the alternative, the “last-exposure rule” or the “return-to-work statute” was determinative of the statute-of-limitations issue; and that the County had waived the statute-of-limitations defense because it did not plead that defense until after the court had conducted the trial on the issue of compensability. On March 12, 2001, the trial court entered the following amended order:
“This cause came to be heard on plaintiffs Motion to Alter or Vacate Judgment. Part of plaintiffs motion is well taken and due to be granted. Plaintiff filed his workman’s compensation claim on September 17, 1999, and not April 27, 2000, as previously found. Further, the plaintiff argues that the latent injury rule dictates the statute of limitations and not the last injurious exposure rule. The latent injury rule applies in cases where, because of the nature, seriousness of, and work connection could not be reasonably recognized by the claimant, or perhaps even by his doctor, or where the injury does not exist in a compensable degree during the claims period [sic]. This is not true here, because the plaintiff knew, at least, by the fall of 1997, that his condition was due to pigeon droppings, and that he had been exposed to them during his employment with the defendant.] ... The plaintiff filed a claim for workman’s compensation benefits in the fall of 1997, which was denied December 27, 1997.
“The court has previously ruled that the last injurious exposure rule applies to occupational disease cases, and the plaintiff must file suit for benefits within two years of his last injurious exposure to pigeon droppings, which was July, 1997[J ... The court again here rules *51 that the last injurious exposure rule[2] applies and not the latent injury rule.
“The return to work statute of [§ ] 25-5-57(a)(3)(l) does not apply, since no benefits were paid to the plaintiff, and no determination of permanent partial disability made.
“The defendant amended its answer to raise the statute of limitations as a defense. This answer has not been stricken by the court.
“Therefore, the motion to alter or vacate the judgment is overruled and denied.”
Patrick argues that the County had waived the defense of the statute of limitations. We agree. Rule 8(c), Ala. R. Civ. P., provides that the statute of limitations is an affirmative defense and must be raised in a responsive pleading; generally, an affirmative defense that is not pleaded when the answer is filed is deemed to have been waived. Johnson v. Life Ins. Co. of Alabama, 581 So.2d 438 (Ala.1991); Ex parte Neely Truck Line, Inc., 588 So.2d 484 (Ala.Civ.App.1991). Rule 8(c) must be read in conjunction with Rule 15, Ala. R. Civ. P. Rule 15(a) provides in part:
“(a) Amendments. Unless a court has ordered otherwise, a party may amend a pleading without leave of court, but subject to disallowance on the court’s own motion or a motion to strike of an adverse party, at any time more than forty-two (42) days before the first setting of the case for trial, and such amendment shall be freely allowed when justice so requires. Thereafter, a party may amend a pleading only by leave of court, and leave shall be given only upon a showing of good cause.”
Rule 15(b) provides in part:
“(b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues.... The Court is to be liberal in granting permission to amend when justice so requires.”
Rule 15(a), Ala. R. Civ. P., requires that amendments “be freely allowed when justice so requires.” See Tounzen v. Southern United Fire Ins. Co., 701 So.2d 1148 (Ala.Civ.App.1997). Under Rule 15, the trial court has discretion to allow or to deny amendments, and the trial court’s ruling on that matter should not be reversed in the absence of an abuse of that discretion. Hayes v. Payne, 523 So.2d 333 (Ala.1987). In addition to the exceptions Rule 15 makes to the rule that an affirmative defense is waived unless it is raised in a responsive pleading, our supreme court has recognized other exceptions. An affirmative defense that has been waived by the defendant’s failure to plead it in the defendant’s answer, may be asserted in a pretrial motion; in an amended pleading, *52 upon written consent of the adverse party; in an amended pleading, if there is no undue delay and no actual prejudice to the opposing party; and if the affirmative defense appears on the face of the complaint. Hayes v. Payne, supra; Ex parte Neely Truck Line, supra.
The County did not assert the statute-of-limitations defense in its answer to Patrick’s complaint; therefore, that defense was deemed waived and it could thereafter be asserted only if one of the exceptions noted above applied. We conclude that none of those exceptions applied. The County first asserted its statute-of-limitations defense in its amended answer, which was filed 63 days after the trial court had entered its order on the issue of compensability of Patrick’s injury and his motion for emergency medical treatment. The exception provided by Rule 15(a) is inapplicable because the amendment was not filed more than 42 days before the trial date and the County did not seek or obtain leave of court in order to file its amended answer. The exception provided by Rule 15(b) is inapplicable because the statute-of-limitations issue was not tried by the “express or implied consent of the parties” at the May 10, 2000, ore tenus proceeding conducted by the trial court. The sole issues tried by the court on that date were the issue of the compensability of Patrick’s injury and the issue of emergency medical treatment. Additionally, the statute-of-limitations defense was not asserted in a pretrial motion; it was not asserted in an amended pleading upon Patrick’s written consent; and it does not appear on the face of the complaint. Finally, we conclude that to permit the County to raise the defense in an amended pleading filed 63 days after the trial court had entered its order on the issues of compensability and emergency medical treatment would cause an undue delay and would be prejudicial to Patrick. If the defense had been asserted prior to trial, or at trial, Patrick would have been able to more fully develop the evidence or address the facts relative to the defense. Accordingly, we conclude that the County had waived its statute-of-limitations defense. Therefore, we reverse the summary judgment entered in favor of the County and remand the case for further proceedings.
REVERSED AND REMANDED.
THOMPSON and PITTMAN, JJ., concur in the result.
CRAWLEY and MURDOCK, JJ., dissent.

. Patrick also stated against the County a claim alleging a retaliatory discharge and a claim alleging intentional infliction of emotional distress. These two claims were later severed by the trial court from the claim seeking workers' compensation benefits. Those claims are not involved on this appeal.

. Although the court refers to the "last-injurious-exposure rule” as being determinative as to when the statutory limitations period begins to run, it is clear to this court that the trial court is referring to the date that the plaintiff was last exposed to the injurious stimuli, see Gattis v. NTN-Bower Corp., 627 So.2d 437 (Ala.Civ.App.1993), and not the "last-injurious-exposure” rule used to determine which insurance carrier is responsible for paying workers’ compensation benefits to an employee who suffers two or more com-pensable injuries with an intervening change of employers or insurance carriers, discussed in Ex parte Pike County Comm’n, 740 So.2d 1080 (Ala.1999).